FILED
Mar 22, 2022
09:47 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **ROBERT J. BLANK,** | ) | **Docket Nos. 2018-07-0725** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **ESTES EXPRESS LINES,** | ) | |
| **Employer,** | ) | |
| **and,** | ) | **State File No. 68179-2018** |
| **NEW HAMPSHIRE INS. CO.,** | ) | |
| **Carrier,** | ) | |
| **And** | ) | |
| **ABIGAIL HUDGENS, as** | ) | |
| **ADMINISTRATOR of the BUREAU** | ) | **Judge Allen Phillips** |
| **OF WORKERS' COMPENSATION,** | ) | |
| **SUBSEQUENT INJURY AND** | ) | |
| **VOCATIONAL RECOVERY FUND.** | ) | |

## COMPENSATION ORDER

Mr. Blank requested benefits for an August 30, 2018 left-shoulder injury. The Court held a Compensation Hearing on February 23, 2022 and awards him benefits as described below.

### History of Claim

Mr. Blank worked for Estes as a truck driver, which required some manual labor. On August 30, 2018, he injured his left shoulder in a forklift accident. Estes provided medical treatment from orthopedic surgeon Dr. Jason Hutchison, who surgically repaired tears in the biceps tendon and rotator cuff. On May 15, 2019, Dr. Hutchison released Mr. Blank to return to work without restrictions and assessed a two-percent permanent impairment rating. Mr. Blank later filed a timely Petition for Benefit Determination for that injury.

Mr. Blank returned to work, and on May 29, 2019, he lifted a table that weighed approximately 400 pounds. He felt pain in his left shoulder and reported the incident to his

1

supervisor. Estes completed a First Report of Injury and provided follow-up medical treatment with Dr. Hutchison.

Dr. Hutchison recorded Mr. Blank's history of lifting the table. He said that incident was a new injury, separate and apart from the original, and he assigned restrictions that prevented Mr. Blank from working.

Dr. Hutchison referred Mr. Blank to his partner, Dr. Adam Smith, for an opinion regarding another surgery. Dr. Smith ultimately performed a second shoulder surgery, and Dr. Hutchison testified that Mr. Blank would not have needed that surgery but for the table-lifting incident. He further testified that Mr. Blank could have returned to work within the restrictions Dr. Smith placed after the second surgery.

Dr. Hutchison also reviewed surveillance photos obtained by Estes after Dr. Smith's surgery that showed Mr. Blank unloading forty-pound bags of mulch from a truck. Dr. Hutchison said that activity, particularly images showing Mr. Blank lifting with outstretched arms, suggested he could return to work, including driving a truck.

Dr. Smith testified Mr. Blank told him he "initially was doing okay, but then had another injury and had recurrent pain." Dr. Smith did not diagnose a new tear in the shoulder but instead called his condition a "strain." Dr. Smith said the table-lifting was a "new injury." However, he noted that Mr. Blank did not tell him about lifting the table at the first visit; rather he gave an initial history of only minimal activity, which Dr. Smith said, "doesn't make sense."

During surgery, Dr. Smith saw "degeneration of the shoulder," meaning the repaired biceps tendon "looked worse," and the shoulder "cartilage had fallen apart." He said a rotator cuff repair like Dr. Hutchison performed can "create a cascade of events that leads to deterioration" of the shoulder. He said he did not know if that deterioration was caused by the table-lifting but did say that the lifting led to the strain. Dr. Smith noted, "[A]ll I can say is . . . [Mr. Blank] was hurting more substantially and . . . had substantial increase in pain" after lifting the table.

Dr. Smith assessed a four-percent permanent impairment rating, with two percent of that rating for the original injury of August 2018, agreeing with Dr. Hutchison.

Mr. Blank saw Dr. Samuel Chung in July 2020 for an independent medical evaluation. Dr. Chung recorded a history of the August 2018 forklift accident; he did not mention the table-lifting incident. Instead, Dr. Chung said Mr. Blank returned to work after Dr. Hutchison released him and "continued to work in his best capacity," but then he returned to Dr. Hutchison for "ongoing complaints of persistent left shoulder functional deficit." Dr. Chung assessed a seven-percent permanent impairment rating and related it to the August 2018 injury.

2

On July 26, 2021, Mr. Blank filed a Petition for Benefit Determination for the May 29, 2019 table-lifting incident. He claimed July 26, which was the day the parties deposed Dr. Hutchison, was the first time he became aware that he had a new injury. Because Estes last paid benefits related to the May 29, 2019 injury on May 26, 2020, it filed a Motion for Summary Judgment on statute of limitations grounds. Estes said Mr. Blank filed his second petition more than one year after it last paid benefits. In contrast, Mr. Blank pointed to Dr. Smith's testimony that a "cascade of events" might lead to deterioration of the shoulder, meaning he did not sustain a new injury.

The Court granted Estes's motion, holding that Mr. Blank did not discover a new injury when Dr. Hutchison was deposed but instead knew of a new injury when he lifted the table. Thus, the Court dismissed Mr. Blank's petition related to the May 29, 2019 date of injury but found the August 2018 injury remained at issue.

The parties proceeded to this Compensation Hearing for the original August 2018 injury. In support of his claim for permanent total disability, Mr. Blank testified he was sixty-four years old and had only an eighth-grade education. His work history was primarily as a truck driver. He recounted the August 2018 forklift accident and confirmed that Dr. Hutchison returned him to work in May 2019. He said he then "reinjured" and "hurt his shoulder again" when lifting the table.

Mr. Blank said Estes terminated him because of Dr. Smith's restrictions. He also claimed continued problems with range of motion and lack of strength in his shoulder, but he admitted the surveillance photos showed him unloading forty-pound bags of mulch. He additionally said he drew unemployment after Dr. Smith released him, and he understood that meant he held himself out as being able to work. He explained he applied for and was offered another truck-driving job, but the new employer revoked the offer when it learned of his restrictions. He has not worked since leaving Estes.

In opposition, Estes presented the testimony of its terminal manager, Billy Oliver, who has twenty-six years of experience in the trucking industry. Mr. Oliver said a driver could work some jobs with a fifty-pound restriction, and someone with dispatching experience, like Mr. Blank, could also work as a dispatcher. Mr. Oliver confirmed Mr. Blank reported a new injury after lifting the table and that Estes completed a First Report of Injury.

Based on this evidence, Mr. Blank argued he was permanently and totally disabled, relying on his limited education, restrictions, and failed attempts to return to work.[1] Mr. Blank also argued that the May 2019 table-lifting incident did not cause his disability, but he instead related it to his 2018 injury. He again pointed to Dr. Smith's testimony regarding a cascade of events that caused deterioration after the first surgery. Thus, Mr. Blank argued

---

[1] The parties presented extensive argument regarding whether Mr. Blank was totally disabled, the period for which he might receive permanent total benefits, and the apportionment of those benefits between Estes and the Subsequent Injury Fund. Given the Court's findings below, it need not recite those arguments.

that, if the Court did not find him totally disabled, it should award him increased benefits under Tennessee Code Annotated section 50-6-307(3)(B) (2021), because he could no longer work due to his original injury.

Mr. Blank admitted Estes paid him his regular salary during the same period that Estes's carrier paid him temporary total disability payments. He confirmed that he signed an agreement to pay back the temporary benefits, and that agreement was placed in evidence. It stated that Mr. Blank agreed to repay a total of $10,037.59 in temporary benefits. He produced a personal check for $7,161.67, representing one payment of the indebtedness. Mr. Blank also testified that he receives Social Security Old Age benefits of $1,659.10 per month after taxes.

For its part, Estes argued that Mr. Blank was not totally disabled but instead only had a two-percent permanent partial disability. It also argued Mr. Blank could not recover any increased benefits because his loss of employment was related to the May 2019 table incident, not the original injury. Finally, it asserted its entitlement to an offset of Social Security benefits against any award and for a credit for the overpayment of temporary total disability.

The Subsequent Injury Fund denied Mr. Blank was totally disabled.

In a post-trial submission, Mr. Blank argued that *Braden v. Mohawk Industries, Inc*., 2022 TN Wrk. Comp. App. Bd. LEXIS 11 (Mar. 1, 2022) supports his position. There, the employee injured his ankle and then returned to work. Later, while merely walking, his ankle popped, and he sought additional benefits. The Appeals Board held that the direct and natural consequences rule allowed recovery. That rule provides that a later injury, whether an aggravation of the original injury or a new and distinct one, is compensable if the direct and natural result of the earlier compensable injury. Moreover, all medical consequences and sequelae that flow from the original injury are compensable. *Id.* at *10. Mr. Blank said that holding was "substantially on all fours" with his case.

**Findings of Fact and Conclusions of Law**

Mr. Blank must prove all elements of his case by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6).

*Date of Injury*

Mr. Blank first argued that his disability after the May 2019 table-lifting incident was a natural and direct consequence of the August 2018 injury, meaning he could recover either permanent total disability or enhanced benefits because of it. The Court respectfully disagrees.

In *Braden,* the Appeals Board held the direct and natural consequences rule provides

that all medical sequelae that flow from an injury are compensable. Here, Mr. Blank relied on Dr. Smith's testimony to argue that his disability flowed from the original 2018 injury. However, that argument ignores both Dr. Hutchison's and Dr. Smith's testimony that the table incident was a new injury.

Though Dr. Smith said the original injury, and treatment of it, can lead to a cascade of events causing deterioration, he also said Mr. Blank's history of only minimal activity upon returning to work in May 2019 was inconsistent with lifting a 400-pound table. Further, Mr. Blank had an increase in pain and disability because of the table incident. The Court finds that Mr. Blank returned to work without restrictions, then had increased disability leading to further surgery because of a specific traumatic injury. Contrast these facts with *Braden,* where the employee returned to work and was merely walking when his ankle popped with no new intervening trauma.

Thus, the Court holds the direct and natural consequences rule does not apply.

*Extent of Permanent Disability*

In assessing Mr. Blank's permanent disability from the 2018 injury, the Court may consider a number of factors, including his medical impairment, education, age, training, and job opportunities. *Braden,* at *21. Additionally, the Court should consider Mr. Blank's own assessment of his physical condition as to ability to return to work. *Id.* at *21-22. The extent of Mr. Blank's vocational disability is a question of fact resolved by a review of both the lay testimony and medical evidence. *Id.* at *22.

Mr. Blank claimed he was permanently and totally disabled. The Court disagrees. An employee may recover permanent total disability benefits only if his injury totally incapacitates him from working. *See* Tenn. Code Ann. § 50-6-207(4)(B). Here, the preponderance of the evidence shows Mr. Blank is not totally incapacitated. He has a fifty-pound lifting restriction but no other limitation. He sought another job and drew unemployment benefits, both suggesting his own belief that he could work. Further, Estes obtained surveillance showing Mr. Blank's ability to unload many forty-pound bags of mulch, a feat of manual labor inconsistent with total incapacitation. Both Drs. Hutchison and Smith believed Mr. Blank could return to work full-time including driving a truck. Thus, the Court holds Mr. Blank is not permanently and totally disabled, and his claim against the Subsequent Injury Fund is dismissed.

However, Mr. Blank *did* prove he sustained a permanent partial disability. The parties agreed that Dr. Hutchison assessed a two-percent impairment rating. Likewise, Dr. Smith attributed two percent of Mr. Blank's total rating to the injury in question. The Court accepts the two-percent rating. The Court gives no weight to Dr. Chung's rating, as he saw Mr. Blank after the May 2019 table-lifting incident but neither mentioned it nor discussed how it may have affected the examination findings. These omissions undermine the rating's

validity.

Thus, the Court holds Mr. Blank sustained a two-percent permanent partial disability and is entitled to an original award of benefits equal to that rating, or nine weeks of benefits. *See* Tenn. Code Ann. § 50-6-207(3)(A).

Mr. Blank is entitled to the original award regardless of his employment status at the time of his maximum medical improvement. *Batey v. Deliver This, Inc*., 2018 TN Wrk. Comp. App. Bd. LEXIS 2, at *8 (Feb. 6, 2018). However, this does not end the inquiry. If Mr. Blank was not working at the end of the initial nine-week period, or if he was not earning the same or greater wage as he was when injured, then he might qualify for increased benefits "if appropriate." Tenn. Code Ann. § 207(3)(B). Here, Mr. Blank might receive increased benefits because he was over age forty and lacked a high school education. *Id.*

In deciding if Mr. Blank is entitled to those increased benefits, the Court must determine whether he had a "meaningful return to work." *Lasser v. Waste Management, Inc*., 2018 TN Wrk. Comp. App. Bd. LEXIS 20, at *15 (May 24, 2018). The Court must assess the reasonableness of Estes in attempting to return him to work and the reasonableness of Mr. Blank in either failing to return or remain at work. *Id.* If an injured worker is unable to continue working because of an injury, no meaningful return to work has occurred in most circumstances. But, if the employee returns to work and then stops due to reasons unrelated to the injury, then he has made a meaningful return to work. *Id.* at *16-17.

Here, Mr. Blank returned to work after the August 2018 injury but then left after the table-lifting incident. He left employment at Estes because of that later event, *not because of the injury at issue,* and the Court holds he cannot receive any increased benefits.

This holding is consistent with *Brewer v. Lincoln Brass Works, Inc*., 991 S.W.2d 226 (Tenn. 1999), where the employee sustained a compensable injury and afterwards returned to work. He received an initial award of permanent partial disability benefits limited to the then-applicable statutory cap. The employee then reinjured his back, had surgery, and was assessed additional impairment. He was unable to continue working, so he sought enlargement of his previous award. *Id.* at 227-228.

The Tennessee Supreme Court held that a request to enlarge a previous award "is not the appropriate vehicle to use when a worker sustains additional injuries or additional anatomical impairment." *Id*. at 229. Instead, an enlargement is proper only when the injured worker returns to work but is later forced to stop because of the original injury. Conversely, if an employee later sustains additional impairment, whether by a later injury or aggravation of the original injury, then the employee must file a new claim. *Id*. Mr. Blank did not file a timely new claim and cannot recover increased benefits.

It follows then that Mr. Blank is entitled to permanent partial disability benefits equal to his two-percent permanent partial impairment rating, or nine weeks of benefits.

*Calculation of Permanent Partial Disability*

To calculate Mr. Blank's award, the Court must address the Social Security offset and any credit Estes may receive for overpayment of temporary total disability.

Tennessee Code Annotated section 50-6-207(4)(A)(i) provides that payments of permanent total disability benefits shall be reduced by the amount of any Social Security Old Age benefits attributable to employer contributions. In *McCoy v. T.T.C. Ill., Inc.*, 14 S.W.3d 734, 737 (Tenn. 2000), the Tennessee Supreme Court held that the reduction applies to employees over age sixty who suffer injuries to the body as a whole and are awarded *either* permanent total or *permanent partial* disability benefits. The Court found the statute was intended to provide a fifty-percent offset of the total amount of Social Security Old Age benefits received by the employee. *Id.* at 738.

Here, Mr. Blank was over age sixty at the time of his August 2018 injury, and the Court has found he sustained a permanent partial disability.[2] He receives $1,659.10 per month in Social Security Old Age Benefits, or $387.87 per week. Fifty percent of those benefits is $191.44. ($1,659.10 x 12 ÷ 52 x 50%). The parties stipulated Mr. Blank's compensation rate was $703.66 per week. So, after a reduction of $191.44, his adjusted weekly rate for benefits is $512.22 and, at that adjusted rate, a two-percent permanent disability equals $4,609.98.

As to the claimed temporary total overpayment, the parties agreed Estes's carrier paid Mr. Blank $10,037.59 for temporary total disability during a period that Estes paid his regular salary. Mr. Blank agreed to repay those benefits. The evidence showed Mr. Blank repaid Estes $7,161.67 via a personal check, but no other evidence of repayments is in the record. Thus, the Court holds Estes is entitled to a remaining credit of $2,875.92 for overpayment of temporary total disability benefits. ($10,037.59 - $7,161.67).

When applying the credit for overpayment to Mr. Blank's adjusted permanent partial disability award, he is entitled to permanent partial disability benefits of $1,734.06.

---

[2] At the time *McCoy* was decided, section 50-6-207(4)(A)(i) provided that permanent total disability would be paid to an employee injured over age sixty until that employee reached age sixty-five, a maximum period of 260 weeks. That section now reads those benefits will be paid to an employee injured after age sixty until he becomes eligible for full Old Age Benefits. However, the current statute retains the 260-week maximum for injuries sustained within five years of the full-benefit eligibility, and the Court finds the offset as defined in *McCoy* still applies. Here, the parties agreed Mr. Blank will be eligible for full Old Age benefits at age sixty-six and one-half years, a date within five years of when he became eligible for permanent disability payments.

**IT IS, THEREFORE, ORDERED** as follows:

1. Estes shall pay Mr. Blank benefits for a two-percent permanent partial disability to the body as a whole, equal to nine weeks of benefits, at the adjusted rate of $512.22 per week, or $4,609.98. After offset of the temporary total disability of $2,875.92, the total award is $1,734.06. Counsel is entitled to a twenty percent attorney fee of the total award, and the Court will consider an award of discretionary costs upon proper motion.

2. Estes shall provide Mr. Blank future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A) if related to the August 30, 2018 injury. Dr. Hutchison shall be the authorized physician.

3. Mr. Blank's claim against the Subsequent Injury Fund is dismissed with prejudice.

4. Estes shall pay $150 costs to the Court Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022).

5. Estes shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

6. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED March 22, 2022.**

_Allen Phillips_
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. Deposition of Dr. Samuel Chung
2. Deposition of Dr. Adam Smith
3. Deposition of Dr. Jason Hutchison
4. Medical Records of Dr. Chung and West Tennessee Bone & Joint Clinic
5. Copy of Mr. Blank's prior settlement
6. Documentation of temporary total disability repayment
7. Still photographs of surveillance performed on Mr. Blank
8. Documentation of Social Security payments (late filed)
9. Pages from Mr. Blank's deposition
10. Mr. Blank's agreement to repay temporary disability benefits

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Scheduling Order
5. Motion to Consolidate
6. Order of Consolidation
7. Compensation Order Granting Summary Judgment
8. Employee's Pre-Hearing Statement
9. Employee's Witness and Exhibit List
10. Employer's Pre-Hearing Statement
11. Employer's Witness and Exhibit List
12. Subsequent Injury Fund's Pre-Hearing Statement
13. Post-Discovery Dispute Certification Notice
14. Subsequent Injury Fund Trial Brief
15. Employer's Trial Brief
16. Order of Continuance
17. Second Order of Continuance
18. Order Resetting Compensation Hearing

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on March 22, 2022.

| Name | Email | Service sent to: |
| --- | --- | --- |
| Jeffrey P. Boyd, Employee's Attorney | X | jboyd@borenandboyd.com dmyles@borenandboyd.com |
| Kenneth Veit, Employer's Attorney | X | kenny.veit@leitnerfirm.com crystal.brown@leitnerfirm.com |
| Art D. Wells, SIVRF Attorney | X | art.wells@tn.gov |

_Penny Shrum_

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

10



Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fullycompleted Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____ **Employer**

Notice is given that _____ *[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date filestamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____ issued

by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                                RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation  $ _____ per month    Child Support  $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile                $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                     $ _____    (FMV) _____

Other                     $ _____    Describe:_____

11. My debts are:

Amount Owed                        To Whom

_____                _____

_____                _____

_____                _____

_____                _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____